IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KEENU JAQUAN DUDLEY, #10306-509, § <br> MOVANT, § <br> § <br> V. § <br> § <br> UNITED STATES OF AMERICA, § <br> RESPONDENT. § | CIVIL CASE NO. 3:24-CV-1014-L <br> (CRIMINAL CASE NO. 3:20-CR-398-L-6) |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), Movant Keenu Jaquan Dudley's *pro se* motion under 28 U.S.C. § 2255 to vacate sentence was referred to the United States Magistrate Judge for an evidentiary hearing and for the issuance of findings and a recommended disposition on his first ground for relief. Doc. 14; Doc. 2 at 4. An evidentiary hearing was held on March 10, 2025, on the claim that defense counsel provided ineffective assistance by failing to file a notice of appeal as instructed by Dudley. Doc. 30. Upon careful review of the relevant pleadings, the record, and the applicable law, Dudley should be **GRANTED** an out-of-time appeal.

**I. BACKGROUND**

In 2023, Dudley pleaded guilty under a plea agreement to possession with intent to distribute a controlled substance and was sentenced to 168 months' imprisonment—a downward variance from the 188-235 guideline range. Crim. Doc. 335.[1] Dudley did not file a direct appeal but timely filed this § 2255 motion. Doc. 2.

---

[1] All "Crim. Doc." Citations refer to the related criminal case, *United States v. Dudley*, No. 3:20-CR-398-L-6 (N.D. Tex. Aug. 8, 2023). All "Doc." Citations refer to this § 2255 case.

Dudley alleges that his trial counsel, Corwin Davis, rendered ineffective assistance by failing to file a notice of appeal as Dudley had requested through his family members. Doc. 2 at 4; Doc. 3 at 6-8. In support of his allegations, Dudley alleges that immediately after sentence was imposed, he attempted to converse with Davis who responded that he would see him at the jail. Doc. 3 at 6. Dudley contends that he "never heard from Mr. Davis or saw him again," however. Doc. 3 at 6. Dudley also proffered as support for his claims (1) a copy of an October 2022 letter to Davis requesting that "motion[s]" be filed to contest sentencing evidence and expressing disappointment with Davis' failure to respond to calls and messages; (2) a copy of an August 10, 2023 letter from Dudley to Davis, which complained about Davis' failure to visit him at the jail after sentencing, and (3) the notarized statement of Dudley's apparent family member attesting to her numerous unanswered calls and messages to Davis. Doc. 7 at 3.

Considering Dudley's *pro se* status, his allegations, and the record evidence, the Court liberally construes Dudley's allegations and arguments in the original § 2255 pleadings in the interest of justice to allege that Davis failed to (1) file a notice of appeal as Dudley requested and (2) adequately consult with him about an appeal. *See Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2005) (liberally construing *pro se* § 2255 pleadings to raise both a failure to file a requested notice of appeal and a failure to consult about appeal); *cf. United States v. Alaniz,* 5 F.4th 632, 638 (5th Cir. 2021) (declining to liberally construe the "original § 2255 materials to encompass failure-to-advise and failure-to-consult claims" only on procedural grounds, to-wit, that a certificate of appealability had been denied on that issue and the court of appeals thus lacked jurisdiction to address that claim).

## II. APPLICABLE STANDARD

The Sixth Amendment guarantees reasonably effective assistance of counsel at all critical stages of a criminal proceeding. See *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To obtain post-conviction relief on a claim that defense counsel was constitutionally ineffective, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness" and that any such deficiency was "prejudicial to the defense." *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the United States Supreme Court applied the *Strickland* test to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." The Supreme Court reaffirmed the well-settled rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega,* 528 U.S. at 477 (cited cases omitted); *see also Garza v. Idaho*, 586 U.S. 232, 242 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."). Under such circumstances, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken'" and "'no further showing from the defendant of the merits of his underlying claims'" is required. *Garza*, 586 U.S. at 237 (quoting *Flores-Ortega*, 528 U.S. at 484); *United States v. Tapp*, 491 F.3d 263, 265-66 (5th Cir. 2007) (finding that the defendant need only show "a reasonable probability that, but for counsel's failure, he would have timely appealed"). This "presumption applies even when the defendant has signed an appeal waiver." *Garza*, 586 U.S. at 237; *see also Tapp*, 491 F.3d at 266.

3

But even where a defendant does not instruct counsel to file an appeal or clearly convey his desire to appeal, counsel has a constitutional duty to consult with the defendant about an appeal. *Flores-Ortega,* 528 U.S. at 480. Such a duty arises "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* In this context, consulting means "advising the defendant about the advantages and disadvantages of taking an appeal[] and making a reasonable effort to discover the defendant's wishes." *Id.* at 478; *United States v. Pham,* 722 F.3d 320, 323-24 (5th Cir. 2013). "The existence of a duty to consult is assessed in light of 'all the information counsel knew or should have known.'" *Id.* at 324 (quoting *Flores-Ortega,* 528 U.S. at 480). "Whether the conviction followed a trial or a guilty plea is 'highly relevant,' although not determinative, as is whether the defendant waived his right to appeal and whether he received a sentence for which he bargained." *Id.* The Supreme Court also anticipated that "district courts would find a duty to consult 'in the vast majority of cases.'" *Id.*

In the event counsel does not meet the constitutionally imposed obligation to consult, whether prejudice resulted again turns on whether the defendant can "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega,* 528 U.S. at 484. This is a fact-intensive inquiry and "evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant" in determining whether he would have timely appealed but for counsel's deficient failure to consult. *Id.* at 485. Although "the performance and prejudice prongs may overlap, they are not in all cases coextensive," and, as before, the defendant need not "demonstrate that his hypothetical

appeal might have had merit[.]'" *Id.* at 486; *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam).

### III. EVIDENTIARY HEARING TESTIMONY

#### A. Dudley's Testimony

Dudley testified that Davis did not explain the plea agreement thoroughly, especially the section about his appeal rights, but that Dudley eventually signed it anyway. Doc. 30 at 6-8. Dudley stated that he met with Davis at the Dallas County Jail, close to the date of his sentencing hearing, to discuss the evidence, the sentence that Judge Lindsay might impose, the ten-year sentence that Dudley hoped for, and the arguments that could be raised to reach that result. Doc. 30 at 9-11.

Dudley further testified that on the day of his sentencing hearing, he first saw Davis in the courtroom, but there was no time to talk. Doc. 30 at 11. The district judge ultimately imposed a sentence of 14 years—significantly more than the 10 years Dudley had hoped to receive. Doc. 30 at 12. According to Dudley, as soon as the district judge informed him of the 14-day period to appeal, he leaned over and whispered to Davis that he "wanted to appeal [his sentence]." Doc. 30 at 12, 22. According to Dudley, Davis appeared to hear him and nodded his head while the district judge was still speaking. Doc. 30 at 12-13. Dudley stated that Davis, however, never spoke to him after the hearing nor later at the Dallas County jail where he was being detained. Doc. 30 at 14.

Dudley further testified that he wrote to Davis on August 10, 2023—three days after sentencing—explaining that he was upset and asking why Davis had not come to see him as promised. Doc. 30 at 14, 16; Hr'g Ex. 1 (letter); *see also* Doc. 7 at 3. Dudley conceded the letter did not specifically ask Davis about a notice of appeal but requested that counsel file "a motion"

5

challenging the criminal history score and the purity of the methamphetamine. Doc. 30 at 26-27. Dudley explained that because he understood Davis would appeal, his letter outlined the arguments that he wanted counsel to raise on appeal. Doc. 30 at 16-17. Dudley also explained that his letter was generally consistent with his expectation of receiving a lesser sentence and his understanding that he should talk to his counsel if he wanted to appeal. Doc. 30 at 17-18. Dudley averred that he normally asked his family members to contact Davis when he wanted to talk to him about his case. Doc. 30 at 24-25.

### B. Davis' Testimony

Davis testified on direct examination by Government's counsel that (1) he had practiced as a criminal defense attorney in both state and federal court for over 13 years, (2) preparing and filing a notice of appeal is a simple task that takes only ten minutes, and (3) when a client wants to appeal, he will file a notice of appeal even if the appeal is meritless or there is an appeal waiver in the plea agreement. Doc. 30 at 29-31, 44-45. Davis also testified that Dudley waived his appellate rights in the plea agreement, which he had reviewed with Dudley many times. Doc. 30 at 39.

Davis averred that he takes appointments in federal criminal cases to "give back to the community," and did not withdraw from Dudley's case because he did not want Dudley to "get railroaded." Doc. 30 at 31-32. Despite Dudley's difficulties reading and writing, Davis recognized that he was "savvy," especially as sentencing approached. Doc. 30 at 36-37. According to Davis, whenever Dudley wanted to communicate with him, he asked his family members to contact Davis, and that he (Davis) had no reason to ignore Dudley's or his family's phone calls. Doc. 30 at 33-34, 62.

Davis further testified that Dudley did not ask him to file a notice of appeal either during or after sentencing and, if Dudley whispered something to him during sentencing, Davis did not comprehend what he said. Doc. 30 at 41, 48-50, 61-62. Davis testified that he had some recollection of Dudley trying to speak to him while the deputy marshals were taking him out of the courtroom, but, again, did not comprehend what Dudley said. Doc. 30 at 49-50. Despite that attempt to communicate, Davis admitted that he did not speak with Dudley after sentencing or during the 14-day period to file a notice of appeal. Doc. 30 at 41-48, 50, 60. Davis stated that he talked to Dudley's family members in the parking lot immediately after sentencing, but they did not contact him during the 14 days following sentencing. Doc. 30 at 42.

Additionally, Davis testified that he attempted to visit Dudley at the Dallas County Jail after sentencing but believed Dudley had refused to see him. Doc. 30 at 42. Davis explained that because Dudley had previously refused to see him, he did not interpret Dudley's refusal after sentencing as a request to file a notice of appeal. Doc. 30 at 62. When asked by the Court how sure he was that Dudley refused to see him after sentencing, David said that he was "pretty sure" but could not be "[one] thousand percent sure[.]" Doc. 30 at 62. Davis added that he would have signed in at the detention facility to see Dudley; explaining that because it was not the first time that Dudley had refused to see him at the jail, he assumed simply that Dudley was upset with him. Doc. 30 at 62-63.

Davis explained that he does not send letters to his clients after sentencing to inform them of their appellate rights or have his clients sign a document confirming if they want to file a notice of appeal. Doc. 30 at 48. Davis added that he did not keep time sheets or submit a Criminal Justice Act (CJA) voucher in Dudley's criminal case, but did prepare the affidavit filed with the Government's response in this action, which he confirmed was correct. Doc. 30 at 57-

7

58. Davis also denied receiving Dudley's August 10, 2023 letter, but said that if he had, he would have confirmed with Dudley if he desired to appeal. Doc. 30 at 34-35, 51-54. Davis testified that, in essence, he was aware that Dudley was dissatisfied with him and the 14-year sentence he received. Doc. 30 at 52-55, 59, 61.

### C. Post-Hearing Evidence

Following the March 10, 2025 evidentiary hearing in this case, Movant's counsel supplemented the record with documents obtained via subpoena from the Dallas County Jail custodian of records confirming the nonexistence of records of any jail visits or attempted jail visits between Davis and Dudley during the 14-day period to file a notice of appeal after Dudley was sentenced. Doc. 29 at 2; Doc. 29-1 (*Aff.*); *see also* Doc. 27 at 4 (*Mot. for Subpoena*).

## IV. ANALYSIS

### A. Failure to File a Notice of Appeal as Requested

An attorney's "duty to perfect an appeal on behalf of a convicted client does not arise on conviction, but when the [defendant] makes known to counsel his desire to appeal the conviction." *Childs v. Collins*, 995 F.2d 67, 69 (5th Cir. 1993). Stated another way, the defendant must clearly and timely communicate to his attorney his desire to appeal. *Id.* (denying ineffective assistance claim where the defendant failed to communicate to counsel his desire to appeal his criminal conviction).

This case turns largely on the credibility of the witnesses, to-wit: the believability of Dudley's version of events versus that of Attorney Davis. To the extent that Davis' testimony contradicts Dudley's, the Court, as trier of fact, is called upon to make a credibility determination. The Court concludes that Dudley's version is more credible in light the corroborating evidence presented, as well as the lack there of.

While Dudley was adamant that he requested Davis to file a notice of appeal after the sentence was imposed, Davis could not recall basic but critical details about his prior visits with Dudley. Davis' testimony that he attempted to visit Dudley at the Dallas County Jail post-sentencing is contradicted by the lack of any documentary evidence supporting that assertion—either in the county jail records or Davis' own files. Notably, Davis did not maintain records of his meetings and interactions with Dudley or his family members and also failed to submit a CJA voucher for the time he spent working on Dudley's case. Given the importance of preserving a Defendant's right to appeal and counsel's complete failure to document any actions in that regard, the Court finds no reason to disbelieve Dudley. Indeed, in contrast to counsel's complete lack of documentation, Dudley produced a copy of a letter he contends he wrote to counsel three days after sentencing in which he expressed his dissatisfaction due to counsel's failure to visit him after sentencing, as he had promised, or to do what Dudley had requested of him. There was no basis to discount that the letter was indeed sent to counsel as Dudley asserted.

Moreover, despite the constitutional obligation to do so, Davis admitted that he never even discussed the possibility of appeal with Dudley post-sentencing, although he was aware of Dudley's dissatisfaction with the 14-year sentence he received. Conversely, Dudley's attempts to communicate with counsel immediately after sentencing suggested, at a minimum, that he might want to discuss pursuing post-sentencing relief. *See Flores-Ortega,* 528 U.S. at 480 (even when a defendant does not instruct counsel to file an appeal or clearly convey his desire to appeal, counsel has a constitutional duty to consult with the defendant about an appeal).

Considering the totality of the circumstances and the reasonable inferences that can be drawn from the same, the Court finds by a preponderance of the evidence that Dudley asserted his desire to appeal the 14-year sentence—which was significantly greater than what Dudley

9

claims to have expected—and communicated that, albeit inartfully, to Davis. As explained previously, prejudice is presumed under such circumstances. *Garza*, 586 U.S. at 237. Thus, the Court finds that Davis provided ineffective assistance.

### B. Failure to Consult Regarding an Appeal

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that [the] defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. In making this determination, courts consider "all the information counsel knew or should have known." *Id.*

#### i. *Counsel's Performance Was Deficient*

In *Pham*, the Court of Appeals for the Court of Appeals for the Fifth Circuit addressed whether a defendant's post-sentencing statements and demeanor, "when viewed in context, was enough to trigger counsel's constitutional duty to consult with [the defendant] about an appeal." There, defense counsel knew that Pham "had hoped to receive a sentence of probation only," and "[w]hen that hope did not materialize, a visibly upset Pham 'brought up that he was concerned about getting 60 months [the mandatory minimum sentence] and wanted to do something to get less time.'" *Pham*, 722 F.3d at 324-26. Because this was "ample demonstration of Pham's interest in doing something to change the outcome of his sentencing through additional proceedings," the Fifth Circuit held that "the post-sentencing statement to counsel and his demeanor when uttering it" were enough to trigger counsel's constitutional duty to consult with Pham about an appeal. *Id.* at 326.

Likewise, in *United States v. Tighe*, 91 F.4th 771, 775 (5th Cir. 2024), the Fifth Circuit found that counsel's failure to consult with the defendant was unreasonable because a rational defendant would have wanted to appeal, and the defendant reasonably demonstrated his interest

10

in appealing. *Id.* The court explained that one indication that the defendant would be interested in appealing was the fact that he was "shocked" by his sentence. *Id.* The court also noted that counsel did not directly ask the defendant after sentencing if he wanted to appeal and, instead, put the onus on the defendant. *Id.* Considering these circumstances, the court concluded that counsel "neither sufficiently consulted with [the defendant] nor made any effort to obtain his wishes about an appeal after sentencing." *Id.* at 776.

Dudley's case is analogous to *Pham* and *Tighe*. Davis admitted that he did not consult with Dudley about his appellate rights, contemporaneously with sentencing or thereafter, and never advised Dudley of the advantages and disadvantages of appealing. That Dudley was disappointed that he had not received a lesser sentence is uncontroverted, however. Davis moved for a downward variance and, at sentencing, argued for a 110-month sentence. Crim. Doc. 331-1; Crim. Doc. 352 at 54. In his *pro se* motion for a downward variance, Dudley asked for a 120-month sentence. Crim. Doc. 333 at 11. Davis should have been at least on notice that Dudley might want to appeal when he received a sentence higher than that argued for. *Tighe*, 91 F.4th at 775. Davis thus had a duty to consult with Dudley about an appeal, that is, to explore the advantages and disadvantages of appealing, and make a reasonable effort to determine his wishes.

Moreover, Davis' belief that he sufficiently counseled Dudley about the advantages and disadvantages of appealing *before* he signed the plea agreement and entered his guilty plea (Doc. 30 at 39) did not obviate his duty to consult with Dudley personally about an appeal *after* sentencing. *See Pham*, 722 F.3d at 324 (finding counsel did not sufficiently consult where, at most, "counsel discussed an appeal in the abstract and even then did so only *before* the sentence was pronounced," and, post-sentencing, counsel "neither mentioned the possibility of an appeal

11

at all nor made any effort to discover [the defendant's] wishes in that regard"). Likewise, that Dudley had no real basis for appeal, did not relieve Davis of the duty to consult with his client. *See Pham*, 722 F.3d at 325 ("[C]ounsel's professional opinion eschewing appeal does not excuse failure to consult altogether."); *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense.").

Indeed, "the decision to appeal rests with the defendant . . . [and] the better practice is for counsel routinely to *consult with the defendant* regarding the possibility of an appeal." *Flores-Ortega*, 528 U.S. at 479 (emphasis added); *Garza*, 586 U.S. at 240 (noting "'the accused has the ultimate authority' to decide whether to 'take an appeal'" (quoted case omitted)). "The Constitution requires that the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal." *United States v. Faubion*, 19 F.3d 226, 231 (5th Cir. 1994) (internal quotations and citation omitted). Simply put, "[c]ounsel's duty to a criminal defendant . . . requires more than simply notice that an appeal is available or advice that an appeal may be unavailing." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999).

For the foregoing reasons, the Court concludes that Davis' failure to fulfill his duty to adequately consult with Dudley following sentencing constituted deficient performance under *Strickland*.

### ii.  *Dudley was Prejudiced by Counsel's Deficient Performance*

In light of the testimony at the evidentiary hearing, the Court also finds that there is a reasonable probability that, but for Davis' deficient failure to consult about appealing, Dudley would have timely appealed. *Flores-Ortega*, 528 U.S. at 484. The uncontroverted testimony

establishes that Dudley immediately asked Davis about appealing while still in the courtroom. Further, in light of Dudley's dissatisfaction with his sentence and the fact that he wrote a letter to Davis three days after sentencing expressing his dissatisfaction with counsel's failure to meet him at the jail as promised and Dudley's desire to do something to lower his sentence, it is plausible that he would have pursued an appeal if presented the option. The probability that Dudley would have pursued an appeal is further bolstered by his receipt of a 14-year sentence—rather than the lesser sentences he and Davis explicitly requested—and the fact that he would have little or nothing to lose by appealing. *See Tighe*, 91 F.4th at 776. Again, Dudley need not establish in this proceeding the merit of any potential appellate issues to demonstrate prejudice. *Garza*, 586 U.S. at 235; *Bejarano*, 751 F.3d at 285.

Thus, on the record before it, the Court finds that Davis' deficient performance in failing to consult with Dudley about his appeal rights following sentencing deprived Dudley of an appeal that he otherwise would have taken, thereby establishing prejudice. *Flores-Ortega*, 528 U.S. at 484.

## V. CONCLUSION

Dudley's § 2255 motion has merit, and he should be permitted to file an out-of-time appeal. *See United States v. West*, 240 F.3d 456, 459-60 (5th Cir. 2001). To effectuate the same, Dudley's § 2255 motion should be **DISMISSED WITHOUT PREJUDICE**, and the Clerk of the Court should be **DIRECTED** to (1) re-enter the judgment in Dudley's Criminal Case No. 3:20-cr-00398-L-6, which will trigger a new appellate deadline in that case, and (2) file a notice

of appeal on Dudley's behalf in his criminal case no later than 14 days after the reentry of the criminal judgment.

**SO RECOMMENDED** on June 4, 2025.

_[signature]_
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to object to 14 days).